23

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

# ORIGINAL

**UNITED STATES OF AMERICA**

**CRIM**

**vs.**

**HONO**

Case:2:19-cr-20726
Judge: Battani, Marianne O.
MJ: Stafford, Elizabeth A.
Filed: 10-31-2019 At 09:36 AM
INFO USA V. ROBINSON (kb)

**VIOLATIONS:**　**18 U.S.C. § 371**
**29 U.S.C. § 501(c)**

**D-1　EDWARD N. ROBINSON,**

**Defendant.**

_____/

## INFORMATION

The United States Attorney charges:

## INTRODUCTION

Unless otherwise stated, at all times material to this Information, the following

was true:

1. The International Union, United Automobile, Aerospace, and Agricultural

Implement Workers of America (referred to herein as "UAW" or as "United Auto

Workers") was a labor organization engaged in an industry affecting commerce

1

within the meaning of Sections 402(i) and 402(j) of Title 29, United States Code. The UAW represented hundreds of thousands of non-managerial employees employed by automobile manufacturers and other employers at numerous locations in Michigan and across the United States.   The UAW was headquartered in Detroit, Michigan.

2. The UAW Region 5 Midwest States Community Action Program (CAP) Council ("UAW Midwest CAP"), the UAW Midwest CAP's predecessor entities, and the UAW Region 5 Southwestern States CAP Council ("UAW Southwest CAP") were labor organizations engaged in an industry affecting commerce within the meaning of Sections 402(i) and 402(j) of Title 29, United States Code.

3. The UAW Midwest CAP, its predecessor entities, and the UAW Southwest CAP are some of the UAW's many Community Action Program Councils funded through "per-capita" tax payments derived from member dues. Both CAP councils existed as labor organizations subordinate to the UAW and were governed by the UAW Constitution and its bylaws.   The UAW Southwest CAP was based in Dallas, Texas; while the UAW Midwest CAP was located at the UAW Region 5's headquarters in Hazelwood, Missouri.   UAW Region 5 was an internal subdivision of the United Auto Workers International union.

4. The UAW, the UAW Midwest CAP, and the UAW Southwest CAP were

2

required to file publicly available annual financial disclosure reports with the United States Department of Labor.

5. From at least in or about 2010 through at least September 2019, **EDWARD N. ROBINSON** was the President of the UAW Midwest CAP or a predecessor entity.   As such, **EDWARD N. ROBINSON** was an officer, within the meaning of Sections 402(n) of Title 29, United States Code, and was responsible for overseeing the operations of this UAW entity.

6. From in or about 2010 through September 2019, UAW Official A and Vance Pearson served as either an officer or direct employee of the United Auto Workers.

7.   From in or about 2010 through in or about 2018, UAW Official B served as either an officer or direct employee of the United Auto Workers.

8. From in or about 2010 through in or about 2016, UAW Official C was directly employed by the United Auto Workers.

9. From in or about 2010 through in or about 2016, UAW Official D served as either an officer or direct employee of the United Auto Workers.

10. From in or about 2010 through in or about 2012, UAW Official E served as an officer of the United Auto Workers.

3

## COUNT 1

### 18 U.S.C. § 371 & 29 U.S.C. § 501(c)
### Conspiracy to Embezzle Union Funds

**D-1    EDWARD N. ROBINSON**

1. The allegations contained in all preceding paragraphs are hereby re-alleged and incorporated by reference in Count 1 as if fully set forth herein.

2. From at least in or about 2010 and continuing through in or about September 2019, both dates being approximate, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant, **EDWARD N. ROBINSON**, Vance Pearson, UAW Official A, UAW Official B, UAW Official C, Union Official D, and UAW Official E did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree with each other and with other individuals, both known and unknown, to commit an offense against the United States, that is, to violate Title 29, United States Code, Section 501(c), embezzlement of union funds.

3. During the course of the conspiracy, while **EDWARD N. ROBINSON**, Vance Pearson, UAW Official A, Union Official B, UAW Official C, Union Official D, and UAW Official E, were officers of the United Auto Workers or were employed directly by the United Auto Workers, they did embezzle, steal, and unlawfully and willfully abstract and convert to their own use more than $1.5 million of the moneys,

4

funds, property, and other assets of the United Auto Workers.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **EDWARD N. ROBINSON** and others, both known and unknown, sought to accomplish the conspiracy, included, among other things:

4. While officers or employees of the United Auto Workers, UAW Official A, UAW Official B, UAW Official C, UAW Official D, UAW Official E, Vance Pearson, and **EDWARD N. ROBINSON** were involved in a multifaceted scheme to embezzle funds from the UAW.  One facet of the scheme involved fraudulently obtaining hundreds of thousands of dollars of UAW funds from the UAW headquarters, the UAW Southwest CAP, and the UAW Midwest CAP.  Much of this money was obtained through the submission of vouchers that claimed the payments were for legitimate expenses for UAW Region 5 conferences.  In reality, the vouchers concealed the true destination of the funds and the true purpose of the expenses, which was for the personal benefit of select senior UAW officials. Another facet involved a scheme to fraudulently divert over $500,000 of union funds from the UAW Midwest CAP or its predecessor entities, a significant portion of which was converted to cash, to further fuel the lavish lifestyles to which these officials became accustomed.

5. While officers or employees of the United Auto Workers, UAW Official A, UAW Official C, Vance Pearson, and **EDWARD N. ROBINSON** established "Master Account" arrangements with various hotels across the United States. Ostensibly, these hotels contracted to facilitate various union conferences and meetings related to UAW Region 5. However, the Master Accounts were used to divert hundreds of thousands of dollars of UAW funds for the personal benefit of select senior UAW officials, including UAW Official A, UAW Official B, UAW Official C, UAW Official D, Vance Pearson, and **EDWARD N. ROBINSON**. These Master Accounts were funded, in part, by the UAW Headquarters based on fraudulent vouchers submitted by senior UAW officials, which misrepresented the destination and purpose of the expenses. Although the vouchers represented the payments were to the hotel for legitimate conference expenses, significant portions of the funds were forwarded through the Master Account to outside vendors for personal expenses including cigars, private villas, high-end liquor and meal expenses, golfing apparel, golf clubs, and green fees. If funds from the UAW's headquarters were exhausted or additional funds were needed, checks were issued from the UAW Midwest CAP and UAW Southwest CAP to satisfy debts incurred by senior UAW officials for illegitimate and personal expenses. This portion of

the fraud resulted in the unauthorized or improper disbursement of over $1 million of UAW funds.

6. While an officer of the United Auto Workers, UAW Official A directed **EDWARD N. ROBINSON** to divert over $850,000 from the UAW Midwest CAP through the acquisition of unsubstantiated and unauthorized UAW Midwest CAP checks. Previously, UAW Official E had directed **EDWARD N. ROBINSON** to similarly divert money from the UAW Midwest CAP. To conceal the theft, **EDWARD N. ROBINSON** was directed by UAW Official A to fraudulently backstop the payments with receipts for fake expenses or for expenses which had already been fully paid. Many of the receipts for expenses utilized by **EDWARD N. ROBINSON** for the cash embezzlement portion of the conspiracy had already been paid for by the United Auto Workers through the Master Account scheme detailed above in order to fraudulently justify the reimbursement of **EDWARD N. ROBINSON** with UAW Midwest CAP funds.

7. During the course of the conspiracy, **EDWARD N. ROBINSON** negotiated between $500,000 and $700,000 in fraudulent, unsubstantiated, or unauthorized checks from the UAW Midwest CAP. **EDWARD N. ROBINSON** negotiated these checks into cash. After **EDWARD N. ROBINSON** obtained the cash, he split the hundreds of thousands in dollars in cash proceeds with UAW

7

Official A, just as **EDWARD N. ROBINSON** had previously supplied cash to UAW Official E.   On occasion, **EDWARD N. ROBINSON** would give cash generated from the scheme to other co-conspirators, including UAW Official C. Between 2010 and 2017, UAW Official A deposited over $93,000 in cash into one of his personal bank accounts.

8. During the course of the conspiracy, portions of the over $850,000 in proceeds from the UAW Midwest CAP portion of the conspiracy were used to pay for personal expenses of **EDWARD N. ROBINSON,** Vance Pearson, Union Official A, Union Official B, Union Official C, Union Official D, and Union Official E.

9. During the course of the conspiracy, **EDWARD N. ROBINSON** made significant purchases of high-end liquor, cigars, wine, golf apparel, golf clubs, and other lavish expenses at the direction of and for senior UAW officials.

10. As part of the scheme, UAW Official A, UAW Official C, and Vance Pearson provided **EDWARD N. ROBINSON** with receipts for paid expenses that **EDWARD N. ROBINSON** used to fraudulently backstop the unsubstantiated or unauthorized checks from the UAW Midwest CAP.

11. As part of the scheme, UAW Official A sometimes instructed **EDWARD N. ROBINSON** to issue checks from the UAW Midwest CAP in odd amounts so as

to conceal the embezzlement activity from accounting scrutiny. UAW Official A also cautioned **EDWARD N. ROBINSON** to avoid cashing any check in excess of $10,000 so as to avoid causing a bank to generate any currency transaction reports.

12. It was a part of the conspiracy that the conspirators caused false UAW records to be maintained and false reports to be filed by the United Auto Workers headquarters in Detroit, Michigan with the Department of Labor, wherein the embezzled funds and fraudulent expenditures were concealed as legitimate expenses of UAW conferences.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan, and elsewhere:

13. In or about December 2015, UAW Official A ordered $13,046.91 in cigars from the Gary's Sales company located in Parker, Arizona. The order by UAW Official A included 12 boxes of Ashton Double Magnum cigars at $268.00 per box (totaling $3,216) and 12 boxes of Ashton Monarch Tubos cigars at $274.50 a box (totaling $3,294). Subsequently, the cost of the cigars was concealed within the expenses of a UAW Region 5 conference, and the UAW headquarters in Detroit that

paid for the conference was never told that the purported expenses of the conference included over $13,000 in cigars.

14. In or about June 2016, a UAW accounting official challenged the propriety of an expense of $19,041.33 for "outside vendors" which had been submitted to the UAW headquarters for payment by Vance Pearson and UAW Official A in connection with a UAW Region 5 conference in California.   On or about June 8, 2016, in an e-mail message, Vance Pearson falsely told the UAW accounting official that the $19,041.33 expense had been for "meals."   In truth and in fact, however, the $19,041.33 expense included $5,670.00 for golf green fees, $375.00 for tips for caddies, and $10,087.92 for golf clothing, pants, shoes, hats, gloves, shorts, jackets, golf balls, sunglasses, and other merchandise purchased by nine UAW officials, including UAW Official A and Vance Pearson.

15.   On or about August 29, 2016, **EDWARD N. ROBINSON** wrote and cashed a UAW Midwest CAP check for $9,200 and split the resulting cash proceeds with UAW Official A. This was done at the direction of and with the full knowledge of UAW Official A.

16. Ostensibly, the $9,200 check was to reimburse **EDWARD N. ROBINSON** for UAW Midwest CAP expenses for meals at the Blue Heron Restaurant and HK's Steakhouse and Bar in Lake Ozark, Missouri. **EDWARD N. ROBINSON** attached these receipts to the check after the check was negotiated to lend credibility to the disbursement. In fact, however, the exact same meals were also paid for with funds derived from the UAW headquarters in Detroit for purported conference expenses through a Master Account arrangement.

17. In or about November 2016, Vance Pearson ordered over $13,000 in cigars from the Gary's Sales company. The order by Pearson included 16 boxes of Diamond Crown Churchills at $243 a box (totaling $3,888) and 10 boxes of Ashton Monarch Tubos cigars at $274.50 a box (totaling $2,745). Subsequently, the cost of the cigars was concealed within the expenses of a UAW Region 5 conference, and the UAW headquarters in Detroit that paid for the conference was never told that the purported expenses of the conference included over $13,000 in cigars.

18. In or about December 2016, January 2017, and February 2017, the UAW Midwest CAP issued checks to **EDWARD N. ROBINSON** in the amounts of $6,554.54, $9,600, and $2,000. Ostensibly, these monies from the UAW Midwest CAP were to reimburse **EDWARD N. ROBINSON** for four meals in January 2017 at Las Casuelas restaurant and LG Prime's Steakhouse in Palm Springs, California.

The UAW headquarters in Detroit, Michigan, however, also paid for these exact same four meals through a Master Account arrangement, purportedly in connection with a UAW Region 5 conference.

19. In or about January and February 2017, **EDWARD N. ROBINSON** cashed the three checks described above and then split the proceeds with UAW Official A.

20. In or about late 2017, UAW Official A advised **EDWARD N. ROBINSON** that they needed to halt the cash embezzlement portion of the conspiracy because of the ongoing federal criminal investigation of the United Auto Workers union and because of a new UAW position being taken by UAW Official A.

21. In or about January 2019, in a meeting among **EDWARD N. ROBINSON**, UAW Official A, and Vance Pearson, UAW Official A promised to provide a sham job to a relative of **EDWARD N. ROBINSON** in order to "take care of" the relative if **ROBINSON** agreed to falsely take sole responsibility for the UAW Midwest CAP cash embezzlement portion of the conspiracy, thereby attempting to protect UAW Official A from federal criminal prosecution.

22. During a meeting in or about March 2019, **EDWARD N. ROBINSON** and UAW Official A discussed the government's investigation and the sham job for

12

**ROBINSON's** relative.   During that meeting, UAW Official A and **EDWARD N. ROBINSON** also discussed whether the government had obtained documents from the union and the hotels relating to the embezzlement scheme.   UAW Official A told **EDWARD N. ROBINSON** that he (UAW Official A) wished they "burned the records."   During that meeting, UAW Official A again assured **EDWARD N. ROBINSON** that UAW Official A would provide for the financial well-being of the relative in exchange for **EDWARD N. ROBINSON** taking sole responsibility for the cash embezzlement.   UAW Official A stated:   "We'll take care of [the relative].   I told you that we'd take care of it."   UAW Official A also expressed concern about whether federal investigators had gotten hold of records concerning the use of UAW money to purchase golf clubs for UAW Official A and other UAW officials.

23. On July 10, 2019, Vance Pearson told **EDWARD N. ROBINSON** he would get a "burner phone" for **ROBINSON**, so that the other conspirators could talk to **ROBINSON** over the telephone without fear of being intercepted on a wiretap by federal criminal investigators.   In addition, Vance Pearson advised **EDWARD N. ROBINSON** that if **ROBINSON** had anything incriminating "at your house, then get rid of it."   Pearson reminded **ROBINSON** what had happened

after federal agents had searched Norwood Jewell's house and discovered incriminating evidence stored at that location.

24. On August 28, 2019, UAW Official A was in possession of over $32,000 in cash at his personal residence.

All in violation of Title 18, United States Code, Section 371 and Title 29, United States Code, Section 501(c).

## COUNT 2

### 18 U.S.C. § 371
### Conspiracy to Defraud the United States

## D-1 EDWARD N. ROBINSON

1. The introductory allegations are incorporated by reference as if fully set forth herein.

2. Between 2014 and 2018, **EDWARD N. ROBINSON** did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree with UAW Official A, Vance Pearson, and with other individuals and entities, both known and unknown, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes.

3. It was part of that conspiracy that **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others concealed more than $1.5 million diverted from the UAW, UAW Midwest CAP, and UAW Southwest CAP.

4. It was part of that conspiracy that **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others received more than $1.5 million in income from the UAW, UAW Midwest CAP, and UAW Southwest CAP, which income was falsely and fraudulently omitted from the IRS Form 990 returns filed by the UAW and UAW Midwest CAP.

5. **EDWARD N. ROBINSON**, UAW Official A, and others failed to report the income they received from their scheme to divert funds from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP on their Form 1040 tax returns filed with the Internal Revenue Service.

## **OVERT ACTS**

In furtherance of the conspiracy, and to effect the objects thereof, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan, and elsewhere:

6. Between January 2017 and December 2017, **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others negotiated "Direct Bill" or "Master

Account" arrangements with the Renaissance Palm Springs Hotel, Loews Coronado Bay Resort, Lodge of Four Seasons, and Thousand Hills Golf Resort. This allowed UAW officials to deposit UAW funds up-front and run a hotel tab for personal retail, grocery, meal, liquor, golf, cigar, and other entertainment expenses at vendors in and around the resorts.   The resorts subsequently satisfied those debts using funds from the UAW's deposits.

7. Between January 2017 and December 2017, **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others prepared, approved, and submitted fraudulent Payment Request Forms to the UAW's international accounting staff requesting that the UAW disburse funds to Renaissance Palm Springs Hotel, Loews Coronado Bay Resort, Lodge of Four Seasons, and Thousand Hills Golf Resort. The purported purpose of the requests was for legitimate UAW business expenses related to training conferences.   In reality, the forms fraudulently concealed the true purpose of the disbursements, which was to divert UAW funds for the personal benefit of high-level UAW officials.   These fraudulent submissions caused UAW accounting personnel to make false accounting entries in the UAW's books and records, which were relied upon to generate financial statements and an IRS Form 990.

8. Between January 2017 and December 2017, **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others facilitated the transfer of $539,608 in funds from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP to the following resorts:

- $200,000 to the Renaissance Palm Springs Hotel

- $161,941 to the Lodge of Four Seasons

- $107,447 to the Loews Coronado Bay Resort

- $70,220 to Thousand Hills Golf Resort

9. Between January 2017 and December 2017, **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others diverted $290,852 in UAW funds held on deposit at the aforementioned resorts for the personal benefit of themselves and other high-level UAW officials. The diverted funds were spent on the following:

- $129,336 for luxury condominiums and villas

- $46,588 for lavish restaurants

- $80,904 for golf greens fees and merchandise purchases

- $15,274 for cigars and related paraphernalia

- $18,750 for spa services, clothing, musicals, amusement park tickets and other purchases for the personal benefit of UAW officials.

10. On or about November 5, 2018, a UAW official filed a 2017 IRS Form 990 on behalf of the UAW.    Unknown to the UAW official, the Form 990 contained the following false statements due to the actions of the conspirators, which prevented the IRS from making an accurate tax assessment with respect to funds diverted from the UAW for the personal benefit of **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others:

• Falsely reported the diverted income to **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others as a legitimate business expense on the UAW's Statement of Functional Expenses

• Failed to disclose $290,852 in reportable income to UAW Official A, Vance Pearson, and other key employees on Part VII – Compensation of Officers, Directors, Trustees, Key Employees, etc. related to funds diverted from the UAW.

11. Between January 2017 and December 2017, **EDWARD N. ROBINSON**, UAW Official A, Vance Pearson, and others facilitated the transfer of $133,611 in funds from the UAW Midwest CAP by issuing checks to **EDWARD N. ROBINSON** or to cash. The checks were cashed and the proceeds were split between **EDWARD N. ROBINSON** and UAW Official A for their personal benefit.

12. Between January 2017 and December 2017, **EDWARD N. ROBINSON**, UAW Official A, and others collected random receipts in an attempt to legitimize

18

the UAW Midwest CAP checks issued to **ROBINSON**.   The receipts were collected from numerous sources and rarely had any legitimate UAW Midwest CAP purpose.   The receipts were provided to UAW Midwest CAP accounting personnel and were fraudulently portrayed as legitimate CAP business expenses. These fraudulent submissions caused the UAW Midwest CAP to make false accounting entries in its books and records, which were relied upon to generate financial statements and an IRS Form 990.

13. On or about March 25, 2018, UAW Midwest CAP President **EDWARD N. ROBINSON** filed a 2017 IRS Form 990 on behalf of the UAW Midwest CAP. The Form 990 contained the following false items, which prevented the IRS from making a proper determination of the UAW Midwest CAP's tax exempt status and prevented the IRS from making an accurate tax assessment with respect to funds diverted from the UAW for the personal benefit of **EDWARD N. ROBINSON**, UAW Official A, and others:

- Falsely reported the diverted income to **EDWARD N. ROBINSON**, UAW Official A, and others as a legitimate business expense on the UAW Midwest CAP's Statement of Functional Expenses

- Failed to disclose UAW Official A as an officer, or key employee on Part VII – Compensation of Officers, Directors, Trustees, Key Employees, etc.

19

- Failed to disclose $133,611 in reportable income to **EDWARD N. ROBINSON** and UAW Official A on Part VII – Compensation of Officers, Directors, Trustees, Key Employees, etc. related to funds diverted from the UAW.

- Failed to disclose the material diversion of the UAW Midwest CAP's assets on Part VI – Governance, Management, and Disclosure and on Schedule O – Supplemental Information to Form 990 related to funds diverted from the UAW Midwest CAP for the personal benefit of **EDWARD N. ROBINSON** and UAW Official A.

14. On or about March 18, 2018, **EDWARD N. ROBINSON** signed and filed a 2017 IRS Form 1040 Individual Tax Return which return failed to report at least $66,805 in income he diverted from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP in 2017.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

### Forfeiture – 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c)

1. Upon conviction of the offense alleged in Count 1 of this Information, defendant, **EDWARD N. ROBINSON**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violations or a conspiracy to commit said violations of Title 18, United States Code, Section 371 and Title 29, United States Code, Section 501(c).

2. If any of the property described in paragraph 1 hereof as being subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred to, sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of this Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

the United States of America, shall be entitled to forfeiture of substitute property under Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

MATTHEW SCHNEIDER
United States Attorney


David A. Gardey                          Steven P. Cares
Assistant United States Attorney         Assistant United States Attorney
Chief, Public Corruption Unit


Date: October 31, 2019

22

| United States District Court<br>Eastern District of Michigan | Criminal Case Cove | Case: 2:19-cr-20726<br>Judge: Battani, Marianne O.<br>MJ: Stafford, Elizabeth A.<br>Filed: 10-31-2019 At 09:36 AM<br>INFO USA V. ROBINSON (kb) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Numbers: 17-20406 and 19-20146 |
|---|---|
| This may be a companion case based on LCrR 57.10(b)(4)[1]: | Judge Assigned to Both Cases: Paul D. Borman |
| ☑Yes ☐No | AUSA's Initials: |

Case Title:  **USA v.  Edward N. Robinson**

County where offense occurred:  **Wayne**

Offense Type:  **Felony**

**Information -- no prior complaint**

## Superseding Case Information

Superseding to Case No: _____  Judge: _____

Reason:

| Defendant Name | Charges | Prior Complaint (if applicable) |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

October 31, 2019
_____
Date

David A. Gardey
**Assistant United States Attorney**
**211 W. Fort Street, Suite 2001**
**Detroit, MI 48226**
**david.gardey@usdoj.gov**
**(313) 226-9591**
**Bar #: P48990**

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence.  Cases may be companion cases even though one of them may have already been terminated.