United States District Court
Eastern District of Michigan
Southern Division

United States of America,

Case No. 19-cr-20726

v.

Honorable Paul D. Borman

D-1 Edward N. Robinson,

Defendant.

Offenses:
Count One: **Conspiracy to Embezzle
Union Funds** (18 U.S.C. § 371);
Count Two: **Conspiracy to Defraud
the United States** (18 U.S.C. § 371).

Maximum Imprisonment:
Count One:          5 years;
Count Two:          5 years.

Maximum Fine:
Count One:          $250,000;
Count Two:          $250,000.

Maximum Supervised Release:
Count One:          3 years;
Count Two:          3 years.

---

# Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant

**Edward N. Robinson** and the government agree as follows:

- 1 -

## I.    Guilty Plea

### A.    Counts of Conviction

Defendant **Edward N. Robinson** will enter a plea of guilty to Count One and Count Two of the Information.

Count One of the Information charges conspiracy to embezzle union funds, in violation of 18 U.S.C. § 371.

Count Two of the Information charges conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.

### Elements of the Offenses

The elements of conspiracy to embezzle union funds, as charged in Count One of the Information, are as follows:

(1)    Two or more persons conspired to violate the Labor-Management Reporting and Disclosure Act in violation of 29 U.S.C. § 501(c).

(2)    The defendant knowingly and voluntarily joined the conspiracy.

(3)    A member of the conspiracy did one of the overt acts described in the Information for the purpose of advancing or helping the conspiracy.

The elements of conspiracy to defraud the United States, as charged in Count Two of the Information, are as follows:

(1)    Two or more persons conspired to defraud the United States by concealing their income, evading the payment of taxes, and causing false Internal Revenue Service Form 990s and 1040s to be filed.

(2)    The defendant knowingly and voluntarily joined the conspiracy.

(3)    A member of the conspiracy did one of the overt acts described in the Information for the purpose of advancing or helping the conspiracy.

**B.    Factual Basis for Guilty Pleas**

The following facts are a sufficient and accurate basis for Defendant **Edward N. Robinson's** guilty plea to Count One:

<u>**Relevant Organizations and Individuals**</u>

1. The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (referred to herein as "UAW" or as "United Auto Workers") was a labor organization engaged in an industry affecting commerce within the meaning of Sections 402(i) and 402(j) of Title 29, United States Code. The UAW represented hundreds of thousands of non-managerial employees employed by automobile manufacturers and other employers at numerous locations in Michigan and across the United States.  The UAW was headquartered in Detroit, Michigan.

2. The UAW Region 5 Midwest States Community Action Program (CAP) Council ("UAW Midwest CAP"), the UAW Midwest CAP's predecessor entities,

and the UAW Region 5 Southwestern States CAP Council ("UAW Southwest CAP") were labor organizations engaged in an industry affecting commerce within the meaning of Sections 402(i) and 402(j) of Title 29, United States Code.

3. The UAW Midwest CAP, its predecessor entities, and the UAW Southwest CAP are some of the UAW's many Community Action Program Councils funded through "per-capita" tax payments derived from member dues. Both CAP councils existed as labor organizations subordinate to the UAW and were governed by the UAW Constitution and its bylaws. The UAW Southwest CAP was based in Dallas, Texas; while the UAW Midwest CAP was located at the UAW Region 5's headquarters in Hazelwood, Missouri. UAW Region 5 was an internal subdivision of the United Auto Workers International union.

4. From at least in or about 2010 through at least September 2019, **Edward N. Robinson** was the President of the UAW Midwest CAP or a predecessor entity. As such, **Edward N. Robinson** was an officer, within the meaning of Sections 402(n) of Title 29, United States Code, and was responsible for overseeing the operations of this UAW entity.

5. At the times set forth in the Information, UAW Official A, UAW Official B, UAW Official C, UAW Official D, UAW Official E, and Vance Pearson served as either an officer or direct employee of the United Auto Workers.

- 4 -

**The Conspiracy to Embezzle UAW Funds**

6. From at least in or about 2010 and continuing through in or about September 2019, both dates being approximate, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant, **Edward N. Robinson**, Vance Pearson, UAW Official A, UAW Official B, UAW Official C, Union Official D, and UAW Official E did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree with each other and with other individuals, both known and unknown, to embezzle union funds.

7. During the course of the conspiracy, while **Edward N. Robinson**, Vance Pearson, UAW Official A, Union Official B, UAW Official C, Union Official D, and UAW Official E, were officers of the United Auto Workers or were employed directly by the United Auto Workers, they did embezzle, steal, and unlawfully and willfully abstract and convert to their own use more than $1 million of the moneys, funds, property, and other assets of the United Auto Workers.

8. While officers or employees of the United Auto Workers, UAW Official A, UAW Official B, UAW Official C, UAW Official D, UAW Official E, Vance Pearson, and **Edward N. Robinson** were involved in a multifaceted scheme to embezzle funds from the UAW. One facet of the scheme involved fraudulently obtaining hundreds of thousands of dollars of UAW funds from the UAW headquarters, the UAW Southwest CAP, and the UAW Midwest CAP. Much of

- 5 -

this money was obtained through the submission of vouchers that claimed the payments were for legitimate expenses for UAW Region 5 conferences. In reality, the vouchers concealed the true destination of the funds and the true purpose of the expenses, which was for the personal benefit of select senior UAW officials. Another facet involved a scheme to fraudulently divert hundreds of thousands of dollars of union funds from the UAW Midwest CAP or its predecessor entities, a significant portion of which was converted to cash, and which was then used by conspirators for personal expenses.

9. While officers or employees of the United Auto Workers, UAW Official A, UAW Official B, UAW Official C, Vance Pearson, and **Edward N. Robinson** established "Master Account" arrangements with various hotels across the United States. Ostensibly, these hotels contracted to facilitate various union conferences and meetings related to UAW Region 5. However, the Master Accounts were used to divert hundreds of thousands of dollars of UAW funds for the personal benefit of select senior UAW officials, including UAW Official A, UAW Official B, UAW Official C, UAW Official D, Vance Pearson, and **Edward N. Robinson**. These Master Accounts were funded, in part, by the UAW Headquarters based on fraudulent vouchers submitted by senior UAW officials, which misrepresented the destination and purpose of the expenses. Although the vouchers represented the payments were to the hotel for legitimate conference expenses, significant portions

- 6 -

of the funds were forwarded through the Master Account to outside vendors for

personal expenses including cigars, private villas, high-end liquor and meal

expenses, golfing apparel, golf clubs, and green fees.  If funds from the UAW's

headquarters were exhausted or additional funds were needed, checks were issued

from the UAW Midwest CAP and UAW Southwest CAP to satisfy debts incurred

by senior UAW officials for illegitimate and personal expenses.  This portion of the

fraud resulted in the unauthorized or improper disbursement of hundreds of

thousands of dollars of UAW funds.

10. While an officer of the United Auto Workers, **Edward N. Robinson**

diverted hundreds of thousands of dollars from the UAW Midwest CAP through the

acquisition of unsubstantiated and unauthorized UAW Midwest CAP checks.

Previously, UAW Official E had directed **Edward N. Robinson** to similarly divert

money from the UAW Midwest CAP.  To conceal the theft, **Edward N. Robinson**

fraudulently backstopped the payments with receipts for fake expenses or for

expenses which had already been fully paid.  Many of the receipts for expenses

utilized by **Edward N. Robinson** for the cash embezzlement portion of the

conspiracy had already been paid for by the United Auto Workers through the

Master Account scheme detailed above in order to fraudulently justify the

reimbursement of **Edward N. Robinson** with UAW Midwest CAP funds.

11. During the course of the conspiracy, **Edward N. Robinson** negotiated between $500,000 and $700,000 in fraudulent, unsubstantiated, or unauthorized checks from the UAW Midwest CAP.  **Edward N. Robinson** negotiated these checks into cash.  After **Edward N. Robinson** obtained the cash, he delivered cash proceeds to UAW Official A, just as **Edward N. Robinson** had previously supplied cash to UAW Official E.  On occasion, **Edward N. Robinson** would give cash generated from the scheme to other co-conspirators, including UAW Official C. UAW Official A knowingly accepted cash proceeds from the scheme.

12. During the course of the conspiracy, portions of the hundreds of thousands of dollars in proceeds from the UAW Midwest CAP portion of the conspiracy were used to pay for personal expenses of **Edward N. Robinson**, Vance Pearson, Union Official A, Union Official B, Union Official C, Union Official D, and Union Official E.

13. During the course of the conspiracy, **Edward N. Robinson** made significant purchases of high-end liquor, cigars, wine, golf apparel, golf clubs, and other lavish expenses at the direction of and for senior UAW officials.

14. As part of the scheme, UAW Official A, UAW Official C, and Vance Pearson provided **Edward N. Robinson** with receipts for paid expenses that **Edward N. Robinson** used to fraudulently backstop the unsubstantiated or unauthorized checks from the UAW Midwest CAP.

15. As part of the scheme, UAW Official A sometimes instructed **Edward N. Robinson** to issue checks from the UAW Midwest CAP in odd amounts so as conceal the embezzlement activity from accounting scrutiny.  UAW Official A also cautioned **Edward N. Robinson** to avoid cashing any check in excess of $10,000 so as to avoid causing a bank to generate any currency transaction reports.

### Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan, and elsewhere:

16.  On or about August 29, 2016, **Edward N. Robinson** wrote and cashed a UAW Midwest CAP check for $9,200 and split the resulting cash proceeds with UAW Official A. This was done at the direction of and with the full knowledge of UAW Official A.

17. Ostensibly, the $9,200 check was to reimburse **Edward N. Robinson** for UAW Midwest CAP expenses for meals at the Blue Heron Restaurant and HK's Steakhouse and Bar in Lake Ozark, Missouri.  **Edward N. Robinson** attached these receipts to the check after the check was negotiated to lend credibility to the disbursement.  In fact, however, the exact same meals were also paid for with funds

- 9 -

derived from the UAW headquarters in Detroit for purported conference expenses through a Master Account arrangement.

18. In or about January 2019, in a meeting among **Edward N. Robinson**, UAW Official A, and Vance Pearson, UAW Official A promised to provide a sham job to a relative of **Edward N. Robinson** in order to "take care of" the relative if **Robinson** agreed to falsely take sole responsibility for the UAW Midwest CAP cash embezzlement portion of the conspiracy, thereby attempting to protect UAW Official A from federal criminal prosecution.

\*　　　　　　\*　　　　　　\*

## **Conspiracy to Defraud the United States**

The following facts are a sufficient and accurate basis for defendant **Edward N. Robinson's** guilty plea to Count Two of the Information:

19. Between 2014 and 2018, **Edward N. Robinson** agreed and conspired with UAW Official A, Vance Pearson, and other individuals and entities, both known and unknown, to impede, impair, obstruct, and defeat the United States Internal Revenue Service from ascertaining, computing, assessing, and collecting taxes.

20. It was part of that conspiracy that **Edward N. Robinson**, UAW Official A, Vance Pearson, and others concealed hundreds of thousands of dollars diverted from the UAW, UAW Midwest CAP, and UAW Southwest CAP.

21. It was part of that conspiracy that **Edward N. Robinson**, UAW Official A, Vance Pearson, and others received compensation from the UAW, UAW Midwest CAP, and UAW Southwest CAP, which compensation was falsely and fraudulently omitted from the IRS Form 990 returns filed by the UAW and UAW Midwest CAP.

22. **Edward N. Robinson**, UAW Official A, and others failed to report the compensation they received from their scheme to divert funds from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP on their Form 1040 tax returns filed with the Internal Revenue Service.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan, and elsewhere:

23. Between January 2017 and December 2017, **Edward N. Robinson,** UAW Official A, Vance Pearson, and others prepared, approved, and submitted fraudulent Payment Request Forms to the UAW's international accounting staff requesting that the UAW disburse funds to Renaissance Palm Springs Hotel, Loews Coronado Bay Resort, Lodge of Four Seasons, and Thousand Hills Golf Resort. The purported purpose of the requests was for legitimate UAW business expenses

related to training conferences.  In reality, the forms fraudulently concealed the true purpose of the disbursements, which was to divert UAW funds for the personal benefit of high-level UAW officials.  These fraudulent submissions caused UAW accounting personnel to make false accounting entries in the UAW's books and records, which were relied upon to generate financial statements and an IRS Form 990.

24. Between January 2017 and December 2017, **Edward N. Robinson**, UAW Official A, Vance Pearson, and others facilitated the transfer of $539,608 in funds from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP to the following resorts:

- $200,000 to the Renaissance Palm Springs Hotel
- $161,941 to the Lodge of Four Seasons
- $107,447 to the Loews Coronado Bay Resort
- $70,220 to Thousand Hills Golf Resort

25. Between January 2017 and December 2017, **Edward N. Robinson**, UAW Official A, Vance Pearson, and others diverted $290,852 in UAW funds held on deposit at the aforementioned resorts for the personal benefit of themselves and other high-level UAW officials. The diverted funds were spent on the following:

- $129,336 for luxury condominiums and villas
- $46,588 for lavish restaurants

- $80,904 for golf greens fees and merchandise purchases

- $15,274 for cigars and related paraphernalia

- $18,750 for spa services, clothing, musicals, amusement park tickets

and other purchases for the personal benefit of UAW officials.

26. On or about November 5, 2018, a UAW official filed a 2017 IRS Form 990 on behalf of the UAW. Unknown to the UAW official, the Form 990 contained the following false statements due to the actions of the conspirators, which prevented the IRS from making an accurate tax assessment with respect to funds diverted from the UAW for the personal benefit of **Edward N. Robinson**, UAW Official A, UAW Official B, Vance Pearson, and others:

- Falsely reported the diverted income to **Edward N. Robinson**, UAW Official A, UAW Official B, Vance Pearson, and others as a legitimate business expense on the UAW's Statement of Functional Expenses

- Failed to disclose $290,852 in reportable compensation to UAW Official A, UAW Official B, Vance Pearson, and other key employees on Part VII – Compensation of Officers, Directors, Trustees, Key Employees, etc. related to funds diverted from the UAW.

27. Between January 2017 and December 2017, **Edward N. Robinson**, UAW Official A, UAW Official B, Vance Pearson, and others facilitated the transfer of $133,611 in funds from the UAW Midwest CAP by issuing checks to

**Edward N. Robinson** or to cash. The checks were cashed and the proceeds were split between **Edward N. Robinson**, UAW Official A, Vance Pearson, and others for their personal benefit.

28. On or about March 18, 2018, **Edward N. Robinson** signed and filed a 2017 IRS Form 1040 Individual Tax Return which return failed to report at least $66,805 in income he diverted from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP in 2017.

## II.   Sentencing Guidelines

### A.   Standard of Proof

The parties agree that the Court will determine all sentencing factors by a preponderance of the evidence.

### B.   Agreed Guideline Range

The parties agree on all sentencing factors, which factors are set forth on the attached sentencing guideline worksheets.

The parties agree that the defendant's advisory sentencing guideline range is **30–37 months**.  If the Court finds:

1. that defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld

- 14 -

information from his probation officer; otherwise demonstrated a

lack of acceptance of responsibility for his offenses; or obstructed

justice or committed any crime,

and if any such finding results in a higher guideline range higher, the higher

guideline range becomes the agreed advisory sentencing guideline range.

### C.    Agreed Departure

The parties agree to recommend that the defendant receive a downward

departure under U.S.S.G. §§ 5H1.1 and 5H1.4 based on his physical health.  The

amount of the departure is left to the Court's discretion.

## III.   Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing

so must consider the sentencing guideline range.

### A.    Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the sentence of

imprisonment in this case may not exceed the top of the agreed guideline range.

The government agrees to recommend that the sentence of imprisonment be no

more than the low end of the agreed guideline range.

### B.    Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment.

There is no agreement on supervised release. In other words, the Court may impose

- 15 -

any term of supervised release up to the statutory maximum term, which in this case is not more than three years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

### C.     Special Assessment

Defendant will pay a special assessment of $200.

### D.     Fine

There is no agreement as to fines.

### E.     Restitution

As to Count One, the Court shall order restitution to every identifiable victim of the defendant's offense.

As to Count Two, pursuant to 18 U.S.C. § 3663, the parties agree that restitution payable to the U.S. Department of the Treasury shall be imposed in this matter in the amount of not less than $42,000, which figure represents additional federal income taxes due and owing to the Internal Revenue Service by defendant **Edward N. Robinson** for tax years 2012 through 2018.  The restitution amount of $42,000 may be increased by any interest and assessable penalties due and owing as calculated by the U.S. Probation department.

**F. Preparation of Tax Forms and Calculation and Payment of Taxes Due and Owing**

(i) Not later than 14 days from entry of his guilty plea, defendant **Edward N. Robinson** will provide the IRS Examination Division with a true and accurate IRS Form 4549 and a true and accurate IRS Form 870 for the years 2012 through 2018 inclusive by delivering a signed copies of such documents to: IRS-CI Special Agent Michael Petroske, 985 Michigan Avenue, Room 251, Detroit, Michigan 48226.

(ii) Defendant **Edward N. Robinson** shall further cooperate fully and in good faith with the Internal Revenue Service in determining his correct tax liability, including, any assessable penalties and applicable interest owed thereon, and shall make satisfactory arrangements with the Internal Revenue Service for payment of any unpaid taxes, penalties, and interest.

(iii) Defendant **Edward N. Robinson** agrees that he will not seek, request or file any claim for any refunds of any taxes, penalties or interest for the tax years 2012 through 2018, inclusive.

(iv) Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, penalties or interest due from defendant **Edward N. Robinson**.

## IV.   Cooperation Agreement

The written cooperation agreement between defendant **Edward N. Robinson** and the government, which is dated March 2, 2020, is part of this plea agreement. The government agrees to bring no additional criminal charges against defendant **Edward N. Robinson** arising out of his involvement in the offenses charged in the Information, or for additional criminal conduct disclosed under the terms of the March 2, 2020 cooperation agreement, unless the defendant withdraws his plea or breaches that cooperation agreement.

## V.   Use of Withdrawn Guilty Plea

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant **Edward N. Robinson** waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

## VI.   Defendant's Right to Withdraw from this Agreement

Defendant **Edward N. Robinson** may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than 37 months. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty

plea under this circumstance, the Court may impose a sentence greater than 37 months.

## VII.   Appeal Waiver

Defendant **Edward N. Robinson** waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 37 months, the defendant also waives any right he may have to appeal his sentence, including the fine and amount of restitution imposed, on any grounds.

Nothing in this waiver bars a timely claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255.

## VIII.  Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If the defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing his to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## IX.    Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government

agency except the United States Attorney's Office for the Eastern District of

Michigan.

## X.    Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates,

is the complete agreement between the parties. This agreement supersedes all other

promises, representations, understandings and agreements between the parties

concerning the subject matter of this plea agreement that were made at any time

before the guilty plea is entered in court. Thus, no oral or written promises made by

the government to defendant or to the attorney for the defendant at any time before

defendant pleads guilty are binding except to the extent they have been explicitly

incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a

written proffer agreement or a written cooperation agreement with the government,

this plea agreement does not supersede or abrogate the terms of any such prior

written agreement.

This agreement also does not prevent any civil or administrative actions

against defendant, or any forfeiture claim against any property, by the United States

or any other party.

**XI.    Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on March 2, 2020. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Matthew Schneider
United States Attorney


_____
David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit

Date: 2-28-2020

_____
Steven Cares
Assistant United States Attorney

By signing below, defendant acknowledges that he has read (or has been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyers, and has had all of his questions answered by his lawyers.

James Martin
Attorney for Defendant

Date: MAr 2 2020

Edward Robinson
Defendant

Date: MAr 2 2020

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

## WORKSHEET A (Offense Levels)

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D.  However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

1.    BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2B1.1(a)(2) | Embezzlement of union funds by a union officer | 6 |
| 2B1.1(b)(1) | Loss amount > $250,000 but ≤ $550,000 | 12 |
| 2B1.1(b)(10) | Sophisticated means | 2 |
| | | |
| | | |

2.    ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3B1.3 | Abuse of position of trust | 2 |
| | | |
| | | |
| | | |

A-1

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

## 3.   ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2.  If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

22

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*If this is the only Worksheet A, check this box and skip Worksheet B.*   ✓

*If the defendant has no criminal history, check this box and skip Worksheet C.*   ✓

A-2

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

## WORKSHEET B (Multiple Counts)

### Instructions (U.S.S.G. ch. 3, pt. D):

- Group the counts of conviction into distinct Groups of Closely Related Counts. "All counts involving substantially the same harm shall be grouped together into a single Group." (*See* U.S.S.G. § 3D1.2.)

- Determine the offense level applicable to each Group. (*See* U.S.S.G. § 3D1.3.)

- Determine the combined offense level by assigning "units" to each Group as follows (*see* U.S.S.G. § 3D1.4):

  - assign 1 unit to the Group with the highest offense level,
  - assign 1 unit to each additional Group that is equally serious as, or 1 to 4 levels less serious than, the Group with the highest offense level,
  - assign ½ unit to each Group that is 5 to 8 levels less serious than the Group with the highest offense level,
  - assign no units to each Group that is 9 or more levels less serious than the Group with the highest offense level.

1. **GROUP ONE:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____

2. **GROUP TWO:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____

3. **GROUP THREE:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____

4. **GROUP FOUR:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____

   unit

   unit

   unit

   unit

5. **TOTAL UNITS**

   units

B-1

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

6. **INCREASE IN OFFENSE LEVEL**

   1 unit ⟶ no increase    2 1/2 – 3 units ⟶ add 3 levels

   1 1/2 units ⟶ add 1 level    3 1/2 – 5 units ⟶ add 4 levels

   2 units ⟶ add 2 levels    > 5 levels ⟶ add 5 levels

7. **ADJUSTED OFFENSE LEVEL OF GROUP WITH THE HIGHEST OFFENSE LEVEL**

8. **COMBINED ADJUSTED OFFENSE LEVEL**

Enter the sum of the offense levels entered in Items 6 and 7.

B-2

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

# WORKSHEET C (Criminal History)

Date of defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses):_____

## 1.   PRIOR SENTENCES

### Prior Sentence of Imprisonment Exceeding 13 Months (U.S.S.G. §§ 4A1.1(a)):                                                                3 POINTS

Enter 3 points for each prior adult sentence of imprisonment exceeding one year and one month that either (1) was imposed within 15 years of the defendant's commencement of the instant offenses (taking into account relevant conduct and stipulated offenses) or (2) resulted in the defendant's confinement during any part of that 15-year period. (*See* U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1), (e)(1).)

### Prior Sentence of Imprisonment of at Least 60 Days (U.S.S.G. §§ 4A1.1(b)):                                                                2 POINTS

Enter 2 points for each prior sentence of imprisonment of at least 60 days not counted under U.S.S.G. § 4A1.1(a) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and resulted in the defendant's confinement during any part of the 5-year period preceding the defendant's commencement of the instant offense (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2)(A)).

### Other Prior Sentences (U.S.S.G. §§ 4A1.1(c)):                                                                1 POINT

Enter 1 point for each prior sentence not counted under U.S.S.G. § 4A1.1(a) or (b) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and was imposed within 5 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)(B)). NOTE: No more than 4 points may be added under this item.

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

| Date of Imposition | Status* | Offense | Sentence | Release Date** | Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

\*      If the defendant committed the offense before turning 18, indicate whether he or she was sentenced as a juvenile (J) or as an adult (A).

\*\*      A release date is required in only two situations:   (1) when a sentence covered under U.S.S.G. § 4A1.1(a) was imposed more than 15 years before the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) but resulted in his or her confinement during any part of that 15-year period; or (2) when a sentence counted under U.S.S.G. § 4A1.1(b) was imposed for an offense committed before the defendant turned 18 but resulted in his or her confinement during any part of the 5-year period preceding his or her commencement of the instant offense (taking into account relevant conduct and stipulated offenses).

C-2

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

**2. COMMISSION OF INSTANT OFFENSE WHILE UNDER PRIOR SENTENCE (U.S.S.G. § 4A1.1(d))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) while under any criminal justice sentence having a custodial or supervisory component, including probation, parole, supervised release, imprisonment, work release, and escape status. (*See* U.S.S.G. §§ 4A1.1(d), 4A1.2(m), (n).) List the type of control and identify the sentence from which it resulted.

**3. PRIOR SENTENCE RESULTING FROM CRIME OF VIOLENCE (U.S.S.G. § 4A1.1(e))**

Enter 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because such sentence was considered related to another sentence resulting from a conviction for a crime of violence. But enter no points where the sentences are considered related because the offenses occurred on the same occasion. (*See* U.S.S.G. §§ 4A1.1(e), 4A1.2(p).) Identify the crimes of violence and briefly explain why the cases are considered related. NOTE: No more than 3 points may be added under this item.

**4. TOTAL CRIMINAL HISTORY POINTS**
Enter the sum of the criminal history points entered in Items 1-4.

| 0 |
|---|

**5. CRIMINAL HISTORY CATEGORY**

| Total Criminal History Points | Criminal History Category |
|---|---|
| 0-1 | I |
| 2-3 | II |
| 4-6 | III |
| 7-9 | IV |
| 10-12 | V |
| ≥13 | VI |

| I |
|---|

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

# WORKSHEET D (Guideline Range)

**1.    (COMBINED) ADJUSTED OFFENSE LEVEL**
Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level entered in item 8 of Worksheet B.

> 22

**2.    ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY (U.S.S.G. § 3E1.1)**

> -3

**3.    TOTAL OFFENSE LEVEL**

Enter the difference between Items 1 and 2.

> 19

**4.    CRIMINAL HISTORY CATEGORY**

Enter "I" if the defendant has no criminal history.   Otherwise, enter the criminal history category entered in Item 6 of Worksheet C.

> I

**5.    CAREER OFFENDER/CRIMINAL LIVELIHOOD/ARMED CAREER CRIMINAL/DANGEROUS SEX OFFENDER (U.S.S.G. ch. 4, pt. B)**

a.    Total Offense Level:  If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision (U.S.S.G. § 4B1.3), the armed career criminal provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a total offense level higher than the total offense level entered in Item 3, enter the higher offense level total.

> NA

b.    Criminal History Category:   If the career offender provision (U.S.S.G. § 4B1.1), the armed career criminal   provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a criminal history category higher than the criminal history category entered in Item 4, enter the higher criminal history category.

> NA

**6.    GUIDELINE RANGE FROM SENTENCING TABLE (U.S.S.G. CH. 5, PT. A)**
Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total offense level entered in Item 3 or 5.a and the criminal history category entered in Item 4 or 5.b.

> 30-37
>
> months

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

7.   **STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE**
If the maximum sentence authorized by statute is below, or a minimum sentence required by statute is above, the guideline range entered in Item 6, enter either the guideline range as restricted by statute or the sentence required by statute.  (*See* U.S.S.G. § 5G1.1.)  If the sentence on any count of conviction is required by statute to be consecutive to the sentence on any other count of conviction, explain why.

NA

months

D-2

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

## WORKSHEET E (Authorized Guideline Sentences)

1. **PROBATION**
   a. Imposition of a Term of Probation (U.S.S.G. § 5B1.1)

   ☒ 1. Probation is not authorized by the guidelines (minimum of guideline range ≥ 10 months or statute of conviction is a Class A or a Class B felony). If this box is checked, go to Item 2 (Split Sentence).

   ☐ 2. Probation is authorized by the guidelines (minimum of guideline range = zero months).

   ☐ 3. Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 9 months).

   b. Length of Term of Probation (U.S.S.G. § 5B1.2)

   ☐ 1. At least 1 year but not more than 5 years (total offense level ≥ 6)
   ☐ 2. No more than 3 years (total offense level < 6).

   c. Conditions of Probation (U.S.S.G. § 5B1.3)

2. **SPLIT SENTENCE (U.S.S.G. § 5C1.1(C)(2),(D)(2))**

   ☒ a. A split sentence is not authorized (minimum of guideline range = 0 months or ≥ 15 months).

   ☐ b. A split sentence is authorized (minimum of guideline range > 0 months but ≤ 12 months). The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 10 or 12 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, 6, 8, or 9 months). The authorized length of the term of supervised release is set forth below in Item 4.b.

3. **IMPRISONMENT (U.S.S.G. CH. 5, PT. C)**
   A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D). (*See* U.S.S.G. § 5C1.1.)

E-1

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

4.   **SUPERVISED RELEASE (U.S.S.G. ch 5., pt. D)**

    a.   <u>Imposition of a Term of Supervised Release</u> (U.S.S.G. § 5D1.1)

        The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute. The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

    b.   <u>Length of Term of Supervised Release</u> (U.S.S.G. § 5D1.2)

        1.   At least 2 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

        [X]   2.   At least 1 year but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

        3.   1 year, where the count of conviction is a Class E felony or a Class A misdemeanor, i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

        4.   The statute of conviction requires a minimum term of supervised release of _____ years.

    c.   Conditions of Supervised Release  (U.S.S.G. § 5D1.3)

    The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

5.   **RESTITUTION (U.S.S.G. § 5E1.1)**

[X]   1.   The court *must* order full restitution to the victim(s) of the offense(s) of conviction. (*See* 18 U.S.C. §§ 3556, 3663A, 3664.)  The court will determine who the victims are and their restitution amounts.

    2.   The court *must* order full restitution to the victim(s) of the offense(s) of conviction. (*See* 18 U.S.C. §§ 3556, 3663A, 3664)  The parties agree that full restitution is $_____.

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

☐ 3. The parties agree that the court *may* order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including $_____. (*See* 18 U.S.C. §§ 3663(a)(3), 3664.)

☐ 4. The parties agree that the court *may also* order restitution to persons other than the victim(s) of the offense(s) of conviction in any amount up to and including $_____. (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3), 3664.)

☐ 5. Restitution is not applicable.

## 6. FINE (U.S.S.G. § 5E1.2)

a. <u>Fines for Individual Defendants</u>

The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).) Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table. (*See* U.S.S.G. § 5E1.2(b).) However, there are exceptions to this general rule. (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

b. <u>Fine Range from Fine Table  (U.S.S.G. § 5E1.2(c)(3))</u>

| **Minimum Fine** | **Maximum Fine** |
|---|---|
| $10,000 | $100,000 |

E-3

| Defendant: | Edward Robinson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

## 7. SPECIAL ASSESSMENT(S) (U.S.S.G. § 5E1.3)

The court must impose a special assessment on every count of conviction. The special assessments for individual defendants are:

- $100.00 for every count charging a felony ($400 for a corporation),
- $25.00 for every count charging a Class A misdemeanor ($125 for a corporation),
- $10.00 for every count charging a Class B misdemeanor ($50 for a corporation), and
- $5.00 for every count charging a Class C misdemeanor or an infraction ($25 for a corporation).

The defendant must pay a special assessment or special assessments in the total amount of $200_____.

## 8. FORFEITURE (U.S.S.G. § 5E1.4)

| ☒ | Assets of the defendant will be forfeited. | ☐ | Assets of the defendant will not be forfeited. |
|---|---|---|---|

## 9. ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES

List any additional applicable guideline, policy statement, or statute.

_____

_____

## 10. UPWARD OR DOWNWARD DEPARTURE (U.S.S.G. ch. 5, pts. H & K)

List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range.

(Rev. April 2014)