UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 2:19-CR-20726 – PDB-RSW |
| ) | |
| v. ) | Hon. Paul D. Borman |
| ) | |
| EDWARD N. ROBINSON, ) | |
| ) | |
| Defendant. | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

COMES NOW Defendant Edward N. Robinson, by and through his undersigned counsel, and respectfully submits the following information for the Court's consideration related to Nick's upcoming sentencing:

Mr. Robinson comes to this point with sincere remorse, accepting responsibility for his conduct, and acknowledging his actions were wrong.

As the Court is well aware, the Government and Nick entered into a plea agreement where "[t]he parties agree to recommend that defendant receive a downward departure under U.S.S.G. §§ 5H1.1 and 5H1.4 based on his physical health."[1] These health issues include chronic heart disease, bypass heart surgery, high blood pressure, high cholesterol, low blood platelets, kidney stones, and back pain requiring routine

---

[1] The Government has indicated that rather than filing a separate motion for downward departure based on Mr. Robinson's health, it will now simply join in our request for a downward departure made herein pursuant to U.S.S.G. §§ 5H1.1 and 5H1.4.

1

cortisone shots. Pursuant to U.S.S.G. §§ 5H1.1 and 5H1.4, the health issues alone warrant consideration of probation for Mr. Robinson, and both Mr. Robinson and his wife's health issues will be discussed in more detail below, but Mr. Robinson respectfully suggests that the §5K1.1 motion to be filed by the Government is of even more consequence when considering the appropriate sentence for Mr. Robinson.

**Mr. Robinson's Cooperation**

As the Government will acknowledge, Nick reached out to the Government to offer his cooperation prior to anyone from the Government attempting to contact him about this case. That action of course is very significant in demonstrating both his cooperation and his remorse for his own actions. Then, the very first time Nick met with the Government, not only did he honestly answer all questions asked of him, but he volunteered significant information without any prompting by the Government agents. Again, such conduct is very significant in demonstrating both his cooperation and his remorse for his own actions.

As the Court can understand, with a case involving union officials, and the UAW specifically, making a case against the highest-ranking officials and those most culpable is a significant challenge for the Government. Therefore, the Government inquired of Nick whether he would be willing to proactively cooperate in the ongoing investigation. Though Nick (and his counsel) had realistic concerns

for the safety of himself and his family, he agreed to do whatever the Government agents requested of him.

That cooperation was extensive and indisputably risky. Nick, a clear non-expert, went into meetings and conversations with the highest-ranking officials of the UAW wearing wires to capture everything that was said. Moreover, not only did he do this once, but on four different occasions Nick continued to take an active role, putting himself at risk in order to assist the Government. Likewise, he recorded approximately 20 different phone calls. Additionally, he met and conversed with the Government agents on more occasions than anyone has kept count of. The personal risk from this cooperation should be indisputable. (One of the targets even asked if he was wearing a wire and made him pull up his shirt.)

Nevertheless, the results of Nick's cooperation have been staggeringly positive. The highest-ranking officials in the UAW's national office have now all been indicted and pled guilty. The Government has successfully entered into a settlement agreement with the union. Though he did not obtain direct evidence on each of them, he is indisputably the domino that brought a large group of crooked individuals down, including two UAW Presidents.

### Mr. Robinson's Health Issues -  U.S.S.G. §§ 5H1.1 and 5H1.4

In assessing Nick's health, the words of his heart specialist are the most meaningful. (Dr. Braverman's letter is dated back in April 2020 - a reflection merely

of how long the sentencing has been delayed). See Exhibit 1. In Dr. Braverman's own words:

> He has a history of coronary bypass surgery years ago. More recently, he developed symptoms of unstable coronary syndrome and was found to have severe multivessel coronary disease. He also has thrombocytopenia and requires therapy from our hematology specialist to maintain adequate platelet count.
>
> In January 2020, he underwent coronary artery intervention. He was found to have severe multivessel coronary artery disease and a patent bypass graft to the left anterior descending but diffuse disease in his native coronary arteries. He underwent complicated coronary artery intervention to the left anterior descending and to the circumflex vessel, with success. He is on antiplatelet therapy and multiple other medications.
>
> His medications include rosuvastatin for cholesterol lowering, amlodipine for blood pressure and coronary artery disease, and aspirin and clopidogrel as antiplatelet therapies to maintain patency of his coronary arteries. He is on Promacta, an immunomodulatory medication, to maintain his platelet count. He requires metoprolol for heart disease.
>
> Mr. Robinson requires long-term evaluation and management of his cardiovascular disease, cholesterol, blood pressure, and platelet count.

One of Nick's conditions Dr. Braverman referenced is Immune Thrombocytopenic PurPura, a disorder which causes low platelets, putting him at risk for bleeding. The risk of bleeding is exasperated by the anti-platelet drugs he takes for his heart condition. Besides a medicine regiment, this condition requires monthly blood testing to ensure the medicine is working.

Additionally, Nick suffers from hip osteoarthritis, acromioclavicular separation, glenohumeral joint osteoarthritis, and left cervical radicular pain. In other

words, a broken-down body.  Given Nick's age, 73, and multiple comorbidities, in combination with the reality that our prison system is still struggling to figure out how to control the Covid-19 virus within its facilities, any sentence of incarceration runs the risk of Nick dying in jail.

The Court does not need to rely on the letters from Nick's doctors. See, Exhibit 1  The Government agents have spent many hours and days with Nick. As a result of that exposure, the Government has agreed that Nick should receive a downward departure under U.S.S.G. §§ 5H1.1 and 5H1.4 based on his physical health. In other words, the Government's exposure to Nick demonstrated to them the sincerity of his at-risk physical condition. Particularly in a world where the Covid-19 virus has yet to be controlled,[2] keeping Nick out of prison is true justice.

**Mrs. Robinson's Health Issues**

Mrs. Robinson is 69 years old and as her doctor, Dr. Hunt's letter shows, suffers from very significant arthritis. She is so impacted by her ailment that she is challenged by such simple tasks as "opening doorknobs, lifting milk cartons or water pitchers, opening jars, etc."  Regrettably, "her arthritis has not been controlled." She also takes medication which lowers her immunity and makes her a greater risk for Covid. We submit that Nick is needed to continue to be the only caretaker Mrs. Robinson has.

---

[2] Out of a prison population of 123,530 inmates, the Bureau of Prisons' website indicates that it has or had over 39,000 inmates test positive – almost 25% of the imprisoned population. https://www.bop.gov/coronavirus/

5

### Mr. Robinson is a Good and Decent Man

Nick broke the law. He does not dispute that fact at all. But there is so much more to who Nick is than what is presented in the charges against him.

The letters written on his behalf speak for themselves - a wonderful family man, a man who fought for justice for the underprivileged, a man who embraced the diversity of his union and his country. See Exhibit 1

A review of the letters sent on Nick's behalf make clear, he is not the person these charges would suggest. Among the letters worth noting, Ken Franklin wrote the Court stating, "When I became the first African American Executive Director of the Missouri Democratic Party, not only did Nick fight for my selection as an Executive Director, he also was one of my greatest champions during my tenure." Another letter from former Missouri Supreme Court Justice Michael Wolff, states " He had a larger-than-life vision of social justice" and "unwavering support of the interests of the poor."

### Nick's Personal History and Characteristics, §3553(a)(1).

Nick served in the military and was honorably discharged. Regrettably, during the time of his service, many in this country did not respect the sacrifice our military men and women made for this country. Luckily, today's veterans are given significantly more respect. We respectfully suggest that his service should be a factor when considering probation.

As courts across the country have recognized, the Sentencing Guidelines do not have the ability to account for the very real suffering and punishment Nick has already endured as a result of his misconduct, and the significant negative consequences he will suffer even without imprisonment. His profession, his livelihood are gone. Notwithstanding the consequences are of his own doing, they can be considered in determining his sentence.

For Nick, losing his right to vote is one of the hardest punishments short of imprisonment that could be imposed. It has meant everything to him.

### Mr. Robinson Has Endured Significant Consequences Already.

As reflected in the Presentence Report, Nick and his wife have lost most of their financial well-being. It can be argued that Nick brought this all on himself, but nevertheless, the impact has been monumental. Importantly, the impact on both Nick's and his wife's health and mental well-being has been nothing short of life-changing. Notwithstanding these new heavy burdens, Nick has fought to maintain what is most important to him - his family.

The seriousness of the offense is fully reflected in the consequences which have already fallen upon him. Nick hopes the Court will consider that an appropriate punishment which is "sufficient, but not greater than necessary," does not require imprisonment.

## The Sentence Should Not be Not Greater Than Necessary

As the Court is well aware, importantly, Congress enacted 18 U.S.C. §3553 which clearly states "[t]he court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2)." (emphasis added) Indeed, this "parsimony provision" embodies "the overarching goal in federal sentencing." *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011). Notably, § 3553(a)'s sufficient-but-not-greater-than-necessary clause sets an independent and certain limit on the sentence that a court may impose to meet the goals of sentencing. *See, United States v. Baker*, 655 F.3d 677, 683 (7th Cir. 2011) (stating that the sentencing court is to impose "**a minimally sufficient** sentence") (emphasis added).; *United States v. Rodriquez*, 527 F.3d 221, 228 (1st Cir. 2008) (explaining that a district court evaluating a variant sentence request should consider all relevant § 3553(a) factors as a group and strive to construct a sentence that is **minimally sufficient** to achieve the broad goals of sentencing") (emphasis added).; *United States v. Kikumura,* 918 F.2d 1084, 1111 (3d Cir. 1990) (characterizing the command as a statutory duty to impose a "**minimally sufficient**" sentence) (emphasis added). "This statutory command . . . requires the district court to impose the **least severe sanction necessary** to achieve the four purposes of sentencing." *United States v. Jackson*, 537 F. Supp. 2d 990, 991 (E.D. Wis. 2008)(emphasis added).

## CONCLUSION

Mr. Robinson will stand before the Court a humbled man with great regret and remorse for his actions which bring him before the Court. He is well aware of the shame he has brought upon himself, the embarrassment he has brought upon his family, and the financial harm he has caused the UAW and his family. However, considering all the factors relevant in this case, Nick is an ideal candidate for probation.

Dated: January 13, 2021

Respectfully submitted,

DOWD BENNETT LLP

By: /s/ *James G. Martin*
James G. Martin
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314/889-7300 (phone)
314/863-2111 (facsimile)
jmartin@dowdbennett.com

*Attorneys for Defendant Edward N. Robinson*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 13, 2021 the foregoing was filed using the CM/ECF system, which will automatically provide notice to all attorneys of record by electronic means.

*/s/ James G. Martin*