## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

                                        NO. 19-CR-20726

     vs.

                                        HON. PAUL D. BORMAN

**D-1   EDWARD ROBINSON,**

     **Defendant.**

_____/

## SENTENCING MEMORANDUM OF THE UNITED STATES

### I.    Introduction

Edward Robinson betrayed the trust of the United Auto Workers ("UAW") union and his fellow union members by helping to engineer a multi-faceted embezzlement scheme over several years in order to benefit the most senior leadership of the UAW and himself.  Additionally, Robinson sought to defraud the IRS by concealing the illegal income that he and his co-conspirators took.

However, in the face of the possible discovery of his crimes and efforts by his co-conspirators to obstruct justice, Robinson chose to come to prosecutors, fully confess his guilt, and then to proactively work to correct his wrongdoing and cooperate in the investigation and prosecution of other individuals.  Robinson's dedicated work with law enforcement assisted in securing key evidence which, along

with his willingness to testify, helped lead to the criminal convictions of two UAW Presidents and another member of the UAW's International Executive Board.  In addition, Robinson's cooperation contributed to the proposed settlement between the United States and the UAW, which provides for independent oversight of the union and a road to democratization, reform, and a UAW leadership with integrity.

In consideration of Robinson's extraordinary cooperation, his chronic medical conditions, and his sincere remorse and acceptance of responsibility, the United States recommends that the Court sentence Robinson to a term of probation combined with substantial restitution payments to the UAW and the IRS.

## II.   **Analysis of Sentencing Factors**

### A.   **Sentencing Guideline Range**

The parties and the Probation Officer are in agreement as to the correct sentencing guideline range applicable in this case.  In the Rule 11 agreement, the parties agreed that the amount of fraud loss for which Robinson is responsible is between $250,000 and $550,000.  This loss amount was based on the amount of the total embezzlement scheme which the government could prove against Robinson accounting for the protections of his proffer agreement.  As a result, Robinson's sentencing guideline range is 30 to 37 months.  Under the terms of the plea

agreement, the possible sentence of imprisonment was capped at 37 months under Federal Rule of Criminal Procedure 11(c)(1)(C).

**B.   <u>Seriousness of the Offense</u>**

There is no question that Robinson's crimes were substantial, serious, and took place over the course of nine years.  Robinson was a mid-level official in the UAW, working within Region 5 of the union headquartered in St. Louis, Missouri. Robinson was the President of the UAW Midwest Community Action Program.  He worked for or with UAW Regional Directors James Wells, Gary Jones, and then Vance Pearson, all members of the UAW's International Executive Board.  In his position, Robinson oversaw the expenditure of millions of dollars in UAW dues money over the course of his tenure at the UAW.  Robinson also had direct contact with and oversaw expenditures to benefit former UAW President Dennis Williams.

Wells and Jones directed Robinson to use UAW funds for the personal benefit of themselves and of other senior UAW leaders.  Through a series of UAW Region 5 conferences in California and Missouri, Robinson helped misuse over $1 million in UAW funds illegally for the personal enjoyment of senior UAW leaders, without any legitimate union business purpose.  Robinson provided custom-made sets of golf clubs for Williams, Jones, Pearson, and himself, each set costing thousands of dollars.  The co-conspirators misused UAW funds so that senior UAW leaders and

3

their families could stay for months at a time in comfortable villas in Palm Springs, California.  The conspiracy provided for lavish meals, over $60,000 worth of cigars, entertainment, rounds of golf, and liquor.  Golf, meals, cigars, and liquor that were provided outside the dates of the UAW "conferences."  Over several years, UAW leaders took over $100,000 worth of clothing, golf equipment, sunglasses, and other items for themselves from the pro shops at some of the best golf courses in the country.  Over the course of the conspiracy, Robinson helped to conceal these expenses within the cost of the UAW conferences, hiding them by inflating other legitimate costs attributable for conference expenses.

During the conspiracy, Robinson engaged in another aspect of the criminal activity by stealing hundreds of thousands of dollars by submitting duplicate invoices to the UAW Midwest CAP for "conference" expenses which had already been paid for by the UAW headquarters.  Robinson then turned around and used the cash to pay for gambling and liquor for Wells.  Robinson also kept some cash for himself, split some with Jones and another UAW official in Region 5, and he used a portion to pay for extra entertainment and items for senior UAW officials in California and Missouri.

Robinson directly harmed the UAW and its membership by assisting in stealing over $1 million during the course of the conspiracy.  This is money that

should have been spent for the benefit of the membership and for legitimate union expenses.  The greater harm from Robinson's crimes, however, is common to all corruption offenses.  Through their embezzlement schemes, Robinson and his co-conspirators undermined the trust and confidence the UAW's membership and the public had in the UAW's leadership and the institution itself.  This was trust that had been built up by honest UAW leaders over the course of decades, which had successfully created the belief that the UAW was a clean union.  The UAW's reputation will take years of work to bring it back again.

### C.   Respect for the Law and Just Punishment

The Court's sentence for Robinson's crime needs to promote respect for the law and impose just punishment for his misconduct.  Robinson was a trusted UAW official, and he intentionally acted to violate federal law for his own personal benefit and for the benefit and at the direction of even more senior UAW officials.  Hundreds of thousands of men and women were UAW members during the period of the conspiracy.  These men and women believed that their union leaders were looking out for their best interests, not stealing union dues money for personal entertainment.  It is difficult to calculate the harm that resulted to the UAW and the labor movement generally.  There is no doubt, however, about the need to impose punishment for the

5

wrongdoing and to vindicate the rule of law in the face of such long-standing and extensive criminal conduct.

In Robinson's case, part of just punishment is a recognition of sincere acceptance of responsibility and remorse and his early and proactive efforts to right the wrongs he committed through cooperation with the authorities. Robinson has openly and completely accepted responsibility for his involvement in the culture of corruption of which he was a part. As set forth herein, the Court should take into account Robinson's cooperation and sincere acceptance of responsibility in determining an appropriate sentence.

### D.   Deterrence

Millions of Americans are members of labor unions. They depend on the leadership of their unions to act zealously in the best interests of the membership and their families and to manage and use the dues money of union members with integrity and only for lawful purposes approved of by the membership. Given the importance of the financial integrity of labor unions, general deterrence is an important component of the Court's sentence in this series of case. Senior union officials need to know that labor corruption will be punished. They need to know that they occupy positions of trust over their members and their families. In overseeing the use of union members' dues money, union leaders must conduct

themselves at the highest level of honesty, integrity, and transparency.  In this series of prosecutions, the Court has sent and will send a message that corruption by labor union leaders will be punished.  However, given the particular circumstances of Robinson, a sentence of probation, combined with restitution, is adequate.

In this instance, the Court has a unique opportunity to send a greater message of deterrence.  Union corruption can be difficult to expose largely due to a lifelong brother/sisterhood amongst its members.  At times, the solidarity that drives the American labor movement can be manipulated by corrupt labor bosses to conceal their crimes and further entrench their power.  Sometimes law enforcement can dedicate years trying to overcome the internal and external influence wielded by high-ranking labor fraudsters and a code of silence amongst union officials in their employ.  Well-placed cooperating individuals within an organization are very often the only way investigators can overcome these hurdles.  The Court's recognition of Robinson's significant proactive cooperation, even in light of the seriousness of his crimes, can send a strong message to other individuals in similar situations and highlight the value of coming forward early to expose corruption to law enforcement.  It is in this way that a probationary sentence can deter corruption in other organizations by encouraging individuals to come forward to report criminal activity to law enforcement.

In terms of individual deterrence, Robinson is unlikely to ever occupy a position of trust with a labor union.  Also, the government agrees that there is little, if any need, for individual deterrence in this case given how Robinson has conducted himself.

### E.    Robinson's Cooperation

Robinson has provided significant and extraordinary cooperation in the investigation and prosecution of other individuals and entities.  His cooperation is set forth in detail in the government's Section 5K1.1 motion.

A significant downward departure in this case will send a strong signal to other individuals involved in criminal activity that they will be rewarded for very early and proactive cooperation in the prosecution of substantial wrongdoing.

### F.    Robinson's Chronic Medical Conditions

As part of the parties' Rule 11 Plea Agreement, the government agreed to join in a request for a downward departure for the 73-year old Robinson based on his multiple and serious chronic medical conditions as detailed in the PSR and by defense counsel.  In making its sentencing recommendation of probation, the United States has taken this departure into consideration.

### III.   Conclusion

Robinson engaged in serious crimes which harmed the UAW and its membership, undermining the confidence of the membership in the union.  In an effort to right those wrongs, Robinson has engaged in unique and powerful cooperation deserving of recognition.  In addition, Robinson faces significant medical problems going forward.  Under all of the circumstances, the Court should sentence Robinson to a term of probation, combined with restitution of $42,000 to the IRS and a substantial restitution award to the UAW, so as to achieve the goals of Section 3553(a).

MATTHEW SCHNEIDER
United States Attorney

*s/David A. Gardey*
DAVID A. GARDEY
STEVEN P. CARES
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9100
David.Gardey@usdoj.gov
Steven.Cares@usdoj.gov

Dated: January 20, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on  January 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Counsel of Record for Edward N. Robinson

*s/David A. Gardey*
DAVID A. GARDEY
Assistant United States Attorney

Dated:  January 20, 2021

10